IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 1, 2014

## STATE OF TENNESSEE v. RODREGUS CARTER

**Appeal from the Criminal Court for Shelby County**
**No. 11-03453   James C. Beasley, Jr., Judge**

_____

**No.  W2013-00850-CCA R3-CD - Filed August 27, 2014**

_____

Appellant, Rodregus Carter, was convicted by a Shelby County jury for aggravated burglary and theft of property valued over $1,000.  The trial court sentenced Appellant as a Range III, Persistent Offender to thirteen years for the aggravated burglary conviction and twelve years for the theft of property conviction, to be served concurrently, for a total effective sentence of thirteen years.  After the denial of a motion for new trial, Appellant presents the following issues on appeal: (1) whether the trial court improperly denied the motion to suppress his statement; (2) whether the evidence was sufficient to support the convictions; (3) whether the trial court improperly admitted the testimony of the victim with regard to her health condition; (4) whether the trial court improperly sentenced Appellant as a Range III, Persistent Offender; and (5) whether Appellant's sentence was excessive.  After a review of the record and applicable authorities, we determine that Appellant's issues are without merit.  Accordingly, the judgments of the trial court are affirmed.


**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Zipporah C. Williams, Memphis, Tennessee, for the appellant, Rodregus Carter.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

*Factual Background*

Maxine Harris owned a home in Shelby County which was being rented by Miranda Jefferson. Ms. Harris drove by the rental property on January 17, 2001. When she approached the residence, she noticed that both of the side doors were open and that the air conditioning unit was missing from the side of the house. Ms. Harris stopped to investigate. When she entered the home, she noticed that Ms. Jefferson's dog was missing. There was flour, sugar, and oil all over the floor of the residence. Clothes were strewn about the residence and a big screen television and a second air conditioning unit were also missing. The inside was basically ransacked. Ms. Harris quickly called Ms. Jefferson to notify her that the home had been broken into.

When Ms. Jefferson arrived at the residence, she confirmed that the following items were missing from the residence: a big screen television; stereo equipment; two air conditioners; her dog; and some of her clothing.[1] Ms. Jefferson had left the home the day before. When she left, the house was locked and her dog was in the back yard. Ms. Jefferson and Ms. Harris were the only people with keys to the residence.

During the investigation, Appellant was developed as a suspect. At the time, Appellant was living a few blocks to the west of Ms. Jefferson's residence. Officer Malcolm Smith went to the home and was invited in by the owner. Appellant was present in the home. When Officer Smith asked Appellant if he knew why he was there, Appellant stated it was probably because he "took a radio and TV out of a house on Glankler." At that point, Appellant was taken into custody.

When Officer Smith and Appellant arrived at the police station, Detective Michael Warren asked Appellant if he could read and write. Appellant replied in the affirmative. At that point, Detective Warren read the advice of rights form to Appellant and had Appellant read the form back to him out loud. Appellant later informed the officer taking the statement that he could not read. Appellant then gave a written statement during which he admitted to taking part in the burglary and theft of the residence on Glankler. Appellant stated that Ronnie Beasley entered the residence through one of the windows and then handed Appellant a television and some stereo equipment. Mr. Beasley kept the television, and Appellant kept the stereo. Appellant eventually sold the stereo equipment on the street for twenty dollars. After the statement was typed, Appellant was given the chance to review the statement. Appellant initialed each question and answer and then signed the statement.

---

[1] Ms. Jefferson also testified that her residence was burglarized two days prior to the incident at issue herein. She testified that she received all of the stolen items back from the first burglary prior to the second burglary. Counsel for Appellant questioned her extensively at trial in order to determine what was stolen during each burglary.

As a result of his statement, Appellant was indicted by the Shelby County Grand Jury for one count of aggravated burglary and one count of theft of property valued over $1,000. Appellant filed a motion to suppress his statement prior to trial. The motion was denied by the trial court.

After a jury trial, Appellant was found guilty of the charges as stated in the indictment. The trial court held a separate sentencing hearing, during which Appellant was sentenced to an effective sentence of thirteen years. Appellant filed a timely notice of appeal. He now challenges: (1)the denial of the motion to suppress; (2) the sufficiency of the evidence; (3) the trial court's admission of testimony by victim Miranda Jefferson with regard to her health condition; (4) his qualification as a Persistent Offender; and (5) his sentence.

*Analysis*

*I. Motion to Suppress*

First, Appellant complains that the trial court erred in denying his motion to suppress his statement to the police. Specifically, Appellant claims the waiver of his "Fifth Amendment rights was not voluntary due to his inability to read and understand the nature of the right being abandoned and the consequences of the decision to abandon it." Additionally, he insists that the testimony at trial "consistently" showed that he did not understand the instructions given to him by the officers when he was reviewing the typed statement. The State argues that Appellant has waived the issue for failure to include the transcript of the hearing on the motion to suppress. We agree.

From the technical record, we have determined that, through counsel, Appellant filed a pretrial motion to suppress. In that motion, he argued that his waiver of rights was not voluntary due to his inability to read. The trial court started to address the issue at a pretrial motions hearing on March 5, 2012. The trial court agreed that any portion of the statement related to a pending unrelated charge should be kept from the jury. However, the trial court implied that it would "hear this other one, motion to suppress maybe this afternoon." It appears that the motion was ultimately denied prior to trial because the State was permitted to admit Appellant's statement during trial. However, we have been unable to locate an order in the technical record denying the motion to suppress. Moreover, the transcript of this motion hearing does not appear in the record on appeal.

Pursuant to the Rules of Appellate Procedure, Appellant is responsible for procuring the relevant transcripts and filing them within sixty days of the notice of appeal or notifying the trial court clerk that no transcript will be filed. Tenn. R. App. P. 24(b). Moreover, Appellant has the obligation to ensure that the record on appeal is sufficient to allow

meaningful review. *State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993). When no transcript is included in the record, this Court must presume that the ruling of the trial court is correct. *See id*; *State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). The failure to include the transcript of a suppression hearing generally constitutes a waiver of the issue. *See Thompson v. State*, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997).

Appellant herein has been given ample opportunity, both at the beginning of this appeal and in response to the State's brief, to cure the defects in the record, but he has not done so. The alleged errors about which the Appellant complains would necessarily require this Court to review what transpired during the hearing on the motion to suppress. However, because Appellant has not included those transcripts in the appellate record, he has waived consideration of this issue.

### II. Admissibility of Victim's Testimony About Health Conditions

Next, Appellant argues that the trial court erred by allowing the victim, Ms. Jefferson, to testify that her health issues have caused memory loss. Specifically, Appellant complains that it was improper for the trial court to allow Ms. Jefferson to testify about seizures she suffered in order to explain discrepancies in her statements to police the day of the incident and her trial testimony about what was stolen from her home because it was irrelevant and deprived Appellant of a fair trial. The trial court found that Ms. Jefferson's medical condition and memory loss were relevant to her credibility and her ability to recall what she told police the night of the incident. Further, the State points out that the trial court instructed the jury on how to properly weigh the evidence provided by Ms. Jefferson. In other words, the State claims that the trial court did not abuse its discretion.

At trial, Ms. Jefferson testified as to the contents of her residence that were taken during the burglary. Ms. Jefferson recalled that the home was also burglarized two days prior to the incident that is the subject matter of the case herein. On cross-examination, counsel for Appellant extensively questioned Ms. Jefferson about several discrepancies in her testimony, specifically concerning where she was living at the time and what was stolen from the home. Ms. Jefferson's testimony was somewhat inconsistent, especially with regard to the items that were missing from her home.

On redirect, counsel for the State attempted to rehabilitate Ms. Jefferson's testimony with an explanation about the source of her memory loss. In particular, counsel sought to introduce testimony to show that Ms. Jefferson had recently been in a coma for fifteen days. Appellant objected, but the trial court ultimately determined that the evidence about Ms. Jefferson's health was relevant to "her ability to state specific facts" and that it went to the "weight" that the jury would give the testimony. The trial court instructed the jury that "the

jury in no case should have any sympathy or prejudice or allow anything but the law and the evidence to have any influence upon them in determining their verdict."

The admissibility of relevant evidence is within the sound discretion of the trial court, and the court's ruling on admissibility will not be disturbed on appeal absent a showing of an abuse of that discretion. *State v. Carruthers*, 35 S.W.3d 516, 576-77 (Tenn. 2000); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993); *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978). As our supreme court stated in *Carruthers*, "the modern trend is to vest more discretion in the trial court's rulings on admissibility." 35 S.W.3d at 577 (citing *Banks*, 564 S.W.2d at 949).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tenn. R. Evid. 403. Prejudicial evidence is not excluded as a matter of law. *Carruthers*, 35 S.W.3d at 577. The court must still determine the relevance of the evidence and weigh its probative value against any undue prejudice. *Id.* The term "undue prejudice" has been defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Banks*, 564 S.W.2d at 951 (quoting Fed. R. Evid. 403, Advisory Comm. Notes). Moreover, jurors are presumed to follow the instructions of the trial court. *State v. Cribbs*, 967 S.W.2d 773, 784 (Tenn. 1983).

In the case herein, we find no error. The trial court did not abuse its discretion in allowing the victim to testify about her physical condition and the medical problems she had suffered since the incident, including the fifteen days in a coma. The trial court correctly found that the testimony was relevant to explain some of her memory loss. We agree. Additionally, the trial court issued a limiting instruction, forbidding the jury from considering the evidence for any other purpose. We must presume that the jurors followed this instruction. The trial court did not abuse its discretion.

*III. Sufficiency of the Evidence*

Appellant insists that the evidence was insufficient to support the conviction for aggravated burglary. Specifically, he complains that none of the proof showed that he entered the property with the intent to commit a felony, theft, or assault. The State, on the other hand, claims that the evidence was sufficient to support the conviction for aggravated burglary.

When a defendant challenges the sufficiency of the evidence on appeal, the relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P.13 (e); *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). An appellant has already been found guilty by a jury, which removes the presumption of innocence and replaces it with a presumption of guilt that the appellant must now overcome. This shifts the burden of proof to the appellant to show the insufficiency of the evidence on appeal. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *State v. Mario Blanch*, No. W2012-01027-CCA-R3-CD, 2013 WL 5531717, at 3 (Tenn. Crim. App., at Jackson, Oct. 4, 2013). Therefore, this Court will afford the State "the strongest legitimate view of the evidence, as well as all reasonable and legitimate interests that may be drawn therefrom." *Tuggle*, 639 S.W.2d at 914. This evidentiary presumption in favor of the State is based on the fact that a guilty verdict that has been rendered by a jury and "approved by the trial judge accredits the testimony of the" State's witnesses and resolves all conflict in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992).

The guilt of the defendant may be predicated upon direct evidence, circumstantial evidence, or a combination of the two. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Regardless, "[t]he standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). As such, questions concerning the weight and value to be given to evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. Consequently, this Court is precluded from re-weighing the evidence when evaluating the convicting proof, nor may we substitute our own inferences for those formed by the trier of fact from circumstantial evidence. *State v. Pruett*, 778 S.W.2d 559, 561 (Tenn.1990); *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996).

Aggravated burglary occurs when a person enters a habitation with the intent to commit a felony, theft, or assault. T.C.A. § 39-14-402(a)(1), -403(a). The specific intent required for a burglary may be established by circumstantial evidence. *See Bollin v. State*, 486 S.W.2d 293, 296 (Tenn. Crim. App. 1972). Additionally, when a defendant breaks and enters into a building containing valuable property with the absence of an "acceptable excuse" for doing so, a jury may "reasonably and legitimately infer . . . a defendant intends to commit theft." *State v. Ingram*, 986 S.W.2d 598, 699 (Tenn. Crim. App. 1998) (citing *Hall v. State*, 490 S.W.2d 495, 496 (Tenn. 1973)).

Viewing the evidence in a light most favorable to the State, the proof at trial, including Appellant's statement, showed that Appellant and his companion, Ronnie Beasley,

intentionally entered Ms. Jefferson's locked home without her consent and removed several items, including at minimum a stereo and a big screen television. Nothing in the record points to an excuse for Appellant's actions. The evidence is sufficient to support the conviction.

*IV. Sentencing*

Lastly, Appellant challenges his sentence, claiming that he should have been sentenced as a Range II, Multiple Offender. Appellant claims his prior felonies of aggravated burglary and theft of property over $1,000 committed on July 21, 2008 were properly considered as one conviction based on the twenty-four hour rule. However, Appellant argues that his two convictions for burglary of a building from June 20, 2005, should have been counted as one conviction for purposes of sentencing under the same rule. The State disagrees. Additionally, Appellant finds fault in the trial court's application of enhancement factors to enhance his sentence beyond the "lower end of the range." The State disagrees.

At the conclusion of the sentencing hearing, the trial court determined that Appellant was a Range III, Persistent Offender with convictions for aggravated burglary, theft of property over $1,000, and three convictions for burglary of a building. Appellant also had convictions for criminal trespass and simple possession. Further, the trial court determined that several enhancement factors applied: (1) that Appellant had a previous history of criminal convictions in addition to those necessary to establish him as a Range III offender; and (2) that he had failed to comply with the conditions of a sentence involving release in the community. As a mitigating factor, the trial court took into consideration the fact that Appellant's behavior did not cause or threaten bodily injury. The trial court specifically took note that Appellant's prior convictions, save several drug convictions, were all "related to burglary" such that "anything at the low end of the range would depreciate the seriousness of the offense and would not deter others likely to commit the offense and further that there have been measures less restrictive than confinement applied to [Appellant]." Additionally, Appellant had been on probation at least twice, "maybe three times," yet continued to commit crimes. As a result, the trial court sentenced Appellant to thirteen years as a Persistent Offender for aggravated burglary and twelve years as a Persistent Offender for theft of property, to be served concurrently with each other but consecutively to a sentence for which Appellant was on probation at the time of the commission of the offenses at issue herein.

Appellate review of sentencing decisions is now based on an abuse of discretion standard. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This Court must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.*

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make on his own behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b),-103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706 n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, a sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute.

### *A. Offender Classification*

The trial court found that Appellant was a Range III, Persistent Offender on the basis of his prior convictions, including a combination of five or more prior felony convictions within the same conviction class or higher or within the next two lower conviction classes.

A defendant is a Persistent Offender if he has "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes." T.C.A. § 40-35-107(a)(l). "Except for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims, convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions." T.C.A. § 40-35-108(b)(4). This is commonly known as the twenty-four-hour merger rule. The legislature amended the statute in 2009 to exclude aggravated burglary from the twenty-four-hour merger rule. *See* T.C.A. § 40-35-108(b)(4).

Appellant was convicted of aggravated burglary, a Class C felony, and theft of property, a Class D felony. *See* T.C.A. §§ 39-14-403(b); 39-14-105(a)(3). During the

sentencing hearing, proof was introduced to indicate that Appellant had prior convictions for aggravated burglary and possession of a Schedule II controlled substance with the intent to sell or deliver, both Class C felonies, as well as four prior convictions for burglary of a building, a Class D felony. Appellant's argument that two of the offenses occurred on the same date is not supported by the record. The record reflects that the offenses at issue actually occurred on June 5, 2005, and June 8, 2005, clearly not within twenty-four hours. The trial court correctly found Appellant to be a Range III, Persistent Offender.

## B. Length of Sentence

The trial court found that several enhancement factors applied: (1) "[Appellant] has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range"; (2) "[Appellant] was a leader in the commission of an offense involving two (2) or more criminal actors"; (3) "[t]he offense involved more than one (1) victim"; (4) "[the] victim of the offense was particularly vulnerable because of age or physical or mental disability"; (8) "[Appellant], before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community"; and (13) "[a]t the time the felony was committed . . . [Appellant was]: (C) Released on probation." T.C.A. § 40-35-114(1), (2), (3), (4), (8), and (13)(C).

After a review of the transcript from the sentencing hearing and the written order entered by the trial court, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. Appellant does not challenge the application of the enhancement factors. In fact, Appellant does nothing but make an unsupported assertion that the sentence should have been at the lower end of the range. We determine that the record supports the trial court's application of the enhancement factors. We conclude that the trial court properly applied the principles and purposes of the Sentencing Act. *See Bise*, 380 S.W.3d at 707. The trial court did not abuse its discretion in determining the length of each sentence. Appellant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE